IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IVONNE ESCOBAR,                          :

     Plaintiff,                          :

v.                                       :        Civil Action No. GLR-12-2426

STEELESOFT MANAGEMENT, LLC,              :
et al.,
                                         :

     Defendants.

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Plaintiff Ivonne Escobar's Motion for Summary Judgment (ECF No. 41).[1] The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

## I.    BACKGROUND[2]

From June 2005 to May 2012, Escobar worked for Defendant Steelesoft Management, LLC ("Steelesoft") at its Baltimore, Maryland office. (Compl. ¶ 7, ECF No. 1). During Escobar's employment with Steelesoft, Defendant Scott R. Steele was President

---

[1] Also pending before the Court is Defendant Scott R. Steele's Opposition to Plaintiff's Motion for Summary Judgment, or Alternatively, to Postpone Until Completion of Discovery (ECF No. 43), which was erroneously docketed as a pending Motion. Accordingly, the Court will construe this filing as an Opposition to Escobar's Motion and deny it.

[2] Unless otherwise noted, the facts outlined here are set forth in Escobar's Complaint (ECF No. 1). To the extent the Court discusses facts that Escobar does not allege in her Complaint, they are uncontroverted and the Court views them in the light most favorable to Steele. The Court will address additional facts when discussing applicable law.

and owner of the company as well as a managing member. (Id. ¶ 9; Pl.'s Mot. Summ. J. ["Pl.'s Mot."] Ex. A ["Interrog. Ans."] Nos. 1, 2, ECF No. 41-3). Escobar typically worked at least forty hours a week, received a salary of $26,650.00 per year, and was paid on a bi-weekly basis. (Compl. ¶¶ 18, 20–21). Escobar "regularly worked in excess of [forty] hours" in a work week and was not compensated at a rate of time and a half for working these overtime hours. (Id. ¶¶ 32–33).

Starting in October 2011, Escobar and other Steelesoft employees began receiving their paychecks late. (Compl. ¶ 22; Mar. 17, 2013 Escobar Aff. ¶ 6, ECF No. 41-5). Between November 2011 and May 2012, Defendants did not pay Escobar during eight pay periods. (Compl. ¶ 23; Pl.'s Mot. Ex. B at Steele0000535–Steele0000542, ECF No. 41-4; Mar. 17, 2013 Escobar Aff. ¶¶ 7–8). Specifically, Defendants "failed to provide [Escobar] any compensation" for the following pay periods: November 12, 2011 through November 25, 2011; November 26, 2011 through December 9, 2011; December 10, 2011 through December 23, 2011; December 24, 2011 through January 6, 2012; March 3, 2012 through March 16, 2012; March 17, 2012 through March 30, 2012; March 31, 2012 through April 14, 2012; and April 14, 2012 through April 27, 2012.[3] (Compl. ¶¶ 23, 25; Mar. 17, 2013 Escobar Aff. ¶¶ 7–8; see Steele Dep., 299:20–300:10; 300:19–302:18, Feb. 21, 2013, ECF No. 41-7). As a result, Escobar resigned from Steelesoft on May 3, 2012. (Compl. ¶ 28).

---

[3] The Complaint states that Escobar was not paid for the pay period from "April 14, 2012 through May 3, 2012." (Compl. ¶ 23h). But her Affidavit states that she was not compensated for the pay period from "April 14, 2012 through April 27, 2012." (Mar. 17, 2013 Escobar Aff. ¶ 7). At this stage in the litigation—summary judgment—the Court takes the statements in Escobar's sworn Affidavit as true.

On August 15, 2012, Escobar sued Defendants. (ECF No. 1). The three-count Complaint alleges violations of: (1) Maryland's Wage Payment and Collection Law (the "MWPCL"), Md. Code Ann., Labor & Employment ("L&E") §§ 3-501 <u>et seq.</u> (West 2019); (2) Maryland's Wage and Hour Law (the "MWHL"), L&E §§ 3-401 <u>et seq.</u> (West 2019); and (3) the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 <u>et seq.</u> (2018). (Compl. ¶¶ 48–69). Escobar seeks unpaid wages, treble damages, liquidated damages, prejudgment interest, and attorney's fees and costs. (<u>Id.</u> at 10–13).

On December 24, 2012, Steele filed a Suggestion of Bankruptcy, which automatically stayed the case against him. (Sugg. Bankr. ¶ 2, ECF No. 11). With the exception of Steele's deposition and some outstanding written discovery, discovery closed on February 15, 2013. (Sched. Order at 2, ECF No. 8; Feb. 11, 2013 Order, ECF No. 15). On March 18, 2013, Escobar filed a Motion for Summary Judgment against Steelesoft. (ECF No. 20). The Court has no record that Steelesoft filed an Opposition.

On April 11, 2013, the Court granted Escobar's unopposed Motion for Summary Judgment against Steelesoft. (Apr. 11, 2013 Order at 1, ECF No. 21). The Court concluded that Escobar was a non-exempt employee, and that Steelesoft improperly withheld Escobar's earned wages and failed to pay her overtime wages. (<u>Id.</u> at 1–2). The Court awarded Escobar a total of $65,095.15: (1) treble damages on $8,200.00 in unpaid wages, totaling $24,600.00 in damages; (2) $829.60 in unpaid overtime, doubled as liquidated damages; and (3) $39,665.55 in attorneys' fees and costs. (<u>Id.</u>). The Court also administratively closed the case pending resolution of Steele's bankruptcy proceedings. (<u>Id.</u> at 2).

On October 11, 2018, the parties submitted a Joint Status Report in which they informed the Court that Steele's bankruptcy proceedings had been dismissed. (Oct. 11, 2018 J. Status Rep. ¶ 3, ECF No. 25). Between October 2018 and January 2019, the Court granted Defendants' three extensions of time so they could retain counsel before the Court lifted the stay. (See ECF Nos. 27, 30, 32). On January 4, 2019, the Court lifted the stay, reopened the case, and set February 4, 2019 as the dispositive pretrial motions deadline. (Jan. 4, 2019 Order, ECF No. 36).

On February 4, 2019, Escobar filed her Motion for Summary Judgment. (ECF No. 41). Steele filed his Opposition on March 8, 2019. (ECF No. 43). Escobar filed a Reply on March 25, 2019. (ECF No. 44).

## II.     DISCUSSION

### A.     **Motion for Summary Judgment**

#### 1.     **Conversion of Escobar's Motion**

As a threshold matter, the Court addresses Steele's contentions that he has not had "the benefit of full discovery or evidence" to support his Opposition because the case against him was stayed on December 16, 2012. (Def.'s Opp'n at 1, ECF No. 43). As a result, Steele asserts, the Court should deny Escobar's Motion and permit him to engage in further discovery. The Court is not persuaded.

To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "[he] cannot present facts essential to justify [his] opposition." Fed.R.Civ.P. 56(d). "[T]o justify a denial of summary judgment on the grounds that additional discovery

is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" Verderamo v. Mayor & City Council of Balt., 4 F.Supp.3d 722, 730 (D.Md. 2014) (quoting Scott v. Nuvell Fin. Servs., LLC, 789 F.Supp.2d 637, 641 (D.Md. 2011)). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (quoting Young v. UPS, No. DKC-08-2586, 2011 WL 665321, at *20 (D.Md. Feb. 14, 2011)).

Here, Steele invokes Rule 56(d) and submits an Affidavit. In his Affidavit, Steele avers that the statements in his Opposition are "true" and that the statements in Escobar's Motion and Affidavit are "false." (Steele Aff. ¶¶ 2, 6, ECF No. 43-1). Steele devotes the bulk of his Affidavit to asserting that Escobar owes approximately $20,000.00 to Steelesoft for taking unearned vacation and time off. (Id. ¶¶ 7, 9–10). Besides stating that he has not "had the opportunity to complete discovery," and therefore "cannot fully respond" to Escobar's Motion without "this crucial evidence," Steele does not specify the evidence he seeks that would create a genuine dispute of material fact. (Id. ¶ 3). In his Opposition, Steele states that he would gather evidence from and depose Escobar, interview witnesses, seek evidence of "the hours [Escobar] worked but didn't," records of Escobar's "false time logged," and records of wages paid to Escobar and hours that she worked. (Def.'s Opp'n at 7–8). Steele overlooks the fact that Steelesoft is likely in possession of much of this evidence, not Escobar. Indeed, Steele's Affidavit supports this conclusion because he attests that Steelesoft's Controller told him that Escobar took unearned vacation time, suggesting that the evidence for Steele's assertions were, at least at one point, in Steelesoft's possession. Further, Steele's requests merely seek to re-litigate the Court's

Order finding Steelesoft liable for failing to fully and properly compensate Escobar. Thus, the Court will deny Steele's request for additional discovery and consider Escobar's Motion.

## 2.    Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation

or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

### 3. Analysis

Escobar contends that because the Court granted summary judgment in her favor and against Steelesoft on her FLSA, MWHL, and MWPCL claims, the Court only needs to determine whether Steele is an "employer" under these statutes and is therefore jointly and severally liable for the judgment against Steelesoft. For his part, Steele disputes the judgment against Steelesoft and requests more time for discovery; he only briefly disputes

his status as an "employer."[4] The Court agrees with Escobar and confines its analysis to whether Steele is an "employer."

The FLSA premises liability upon the existence of an employer-employee relationship. <u>Kerr v. Marshall Univ. Bd. of Governors</u>, 824 F.3d 62, 83 (4th Cir. 2016) (citing <u>Benshoff v. City of Virginia Beach</u>, 180 F.3d 136, 140 (4th Cir. 1999)). The employee has the burden of pleading and proving that relationship. <u>Id.</u> (citing <u>Benshoff</u>, 180 F.3d at 140). The FLSA defines "employer," in relevant part, as "any person acting directly or indirectly in the interest of an employer in relation to an employee." <u>Id.</u> (quoting 29 U.S.C. § 203(d)).[5] The United States Court of Appeals for the Fourth Circuit has adopted the "economic reality test" to determine whether an employer-employee relationship exists. <u>Id.</u> (citing <u>Schultz v. Capital Int'l Sec., Inc.</u>, 466 F.3d 298, 304 (4th Cir. 2006)). The economic reality test also determines whether a person is an "employer" under the MWHL. <u>Mould v. NJG Food Serv. Inc.</u>, 37 F.Supp.3d 762, 775 (D.Md. 2014) (citing <u>Newell v. Runnels</u>, 967 A.2d 729, 770 (Md. 2009)); <u>see also</u> <u>Alvarez-Soto v. B. Frank Joy, LLC</u>, 258 F.Supp.3d 615, 631 (D.Md. 2017) ("Under the MWHL . . . , courts use the same

---

[4] Steele also requests that the Court revisit its entry of summary judgment against Steelesoft "in lieu of [Steelesoft] having to engage counsel [and] hav[ing] the expense of filing a Rule 60 motion." (Def.'s Opp'n at 17). The Court denies Steele's request for at least two reasons. First, when Escobar filed her Motion for Summary Judgment against Steelesoft, Steelesoft was represented by counsel and discovery had closed. Thus, Steelesoft had presumably gathered the evidence it needed to oppose Escobar's Motion, yet it failed to do so. Second, as an LLC, Steelesoft must be represented by counsel. <u>See</u> Local Rule 101.1(a) (D.Md. 2018) ("All parties other than individuals must be represented by counsel."). The Court, therefore, declines to consider any arguments Steele makes on Steelesoft's behalf.

[5] The MWHL similarly defines "employer" as "a person who acts directly or indirectly in the interest of another employer with an employee." L&E § 3-401(b).

'economic reality' test applicable to the FLSA to determine whether a defendant is an 'employer.'" (citations omitted)). Although the MWPCL's definition of "employer" differs from the FLSA's and MWHL's definitions,[6] courts in this district have applied the economic reality test to MWPCL claims, too. See, e.g., Rivera v. Mo's Fisherman Exch., Inc., No. ELH-15-1427, 2018 WL 2020423, at *11 (D.Md. May 1, 2018).

Under the economic reality test, the Court considers several factors. These factors include whether the alleged employer: (1) "had the power to hire and fire the employees"; (2) "supervised and controlled employee work schedules or conditions of employment"; (3) "determined the rate and method of payment"; and (4) "maintained employment records." Kerr, 824 F.3d at 83 (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)). The Court may also consider the individual's job description and "financial interest in the enterprise." McFeeley v. Jackson St. Entm't, LLC, 47 F.Supp.3d 260, 274 (D.Md. 2014) (first quoting Gionfriddo v. Jason Zink, LLC, 769 F.Supp.2d 880, 890 (D.Md. 2011); and then citing Roman v. Guapos III, Inc., 970 F.Supp.2d 407, 416 (D.Md. 2013)), aff'd, 825 F.3d 235 (4th Cir. 2016). No one factor is dispositive; rather, the Court considers the totality of the circumstances. Kerr, 824 F.3d at 83.

Here, Escobar avers that Steele "had the authority to hire, fire, suspend, and issue disciplines for employees," including her, and that Steele "was responsible for creating employment policies followed by Steelesoft [e]mployees." (Escobar Aff. ¶ 3, ECF No. ECF No. 41-18). Escobar further attests that Steele reviewed and approved her time

---

[6] The MWPCL defines "employer" as "any person who employs an individual in the State or a successor of the person." L&E § 3-501(b).

records, instructed her to work off-the-clock hours without compensation and overtime hours without compensation at the overtime rate, and approved of her not being paid for the eight pay periods from November 2011 to May 2012. (Id.).

In his Opposition, not his sworn Affidavit, Steele counters that he was not Escobar's "direct supervisor, never determined her work schedule, never review[ed] any employee of [Steelesoft]'s timesheets," and that "managers handled the employees and payroll." (Def.'s Opp'n at 8). Steele also disputes Escobar's assertions regarding off-the-clock and overtime hours, as well as his approval of Escobar not being paid for eight pay periods. In his sworn Affidavit, however, Steele avers that Steelesoft's Controller informed Steele, "as manager of [Steelesoft]," that Escobar allegedly "was paid for time she did not work" and took excess vacation time; therefore, she owed Steelesoft $20,000.00 in wages to which she was not entitled. (Steele Aff. ¶¶ 9–10). Steele states that he addressed the matter with Escobar and gave her the option to repay the $20,000.00 in full, enter into a repayment plan, or "reduce the amount of money owed by working it off." (Id. ¶ 10). Steele avers that Escobar chose to work off the money she owed, that "the [C]ontroller and I left the meeting on terms everyone seemed satisfied with," and that "I as manager allowed her to honor working the time off." (Id. ¶¶ 10–11) (emphasis added). Steele further states that he advised Escobar that "she would need to work the hours agreed to in her employment offer letter to remain[ ] employed," that "what she did was unacceptable," and that Escobar was paid for two months "to ease the repayment schedule." (Id. ¶¶ 12, 14). Thus, despite his assertions to the contrary, Steele's own statements reflect that he had the power to fire and discipline Escobar, and controlled the conditions of her employment by entering into an

agreement whereby Escobar would "work off" wages she allegedly owed Steelesoft. Steele's own statements also corroborate Escobar's assertions that Steele had the power to hire, fire, and discipline employees and that he approved of her not being paid for eight pay periods. Considering the totality of the circumstances, including that Steele had an ownership interest in Steelesoft as a managing member, the Court concludes that Steele was an "employer" under the economic reality test.

In sum, there is no genuine dispute of material fact that Steele was an "employer" under the FLSA, MWHL, and MWPCL. Accordingly, the Court will grant Escobar's Motion.

## B.    Attorneys' Fees and Costs

In her Motion and Reply, Escobar requests that the Court award her supplemental attorneys' fees and costs and that the Court order Steele to pay the previous attorneys' fees award against Steelesoft. Steele does not address Escobar's requests.

The FLSA mandates the award of "reasonable attorney's fee[s] . . . and costs" to the prevailing plaintiff. 29 U.S.C. § 216(b) (2018); see also Randolph v. Powercomm Constr., Inc., 715 F.App'x 227, 230 (4th Cir. 2017). The MWHL and MWPCL also contain provisions that permit, but do not mandate, the Court to award the prevailing plaintiff attorneys' fees and costs. Friolo v. Frankel (Friolo II), 942 A.2d 1242, 1250 (Md. 2008) (The MWHL and MWPCL "permit a trial court, in its discretion, to award attorneys' fees, and such discretion, . . . is to be exercised liberally in favor of awarding fees, at least in appropriate cases." (quoting Friolo v. Frankel (Friolo I), 819 A.2d 354, 362 (Md. 2003)); see also L&E § 3-427(d)(1)(iii); L&E § 3-507.2(b). Under Local Rule 109, requests for an

award of attorneys' fees must be supported by a memorandum containing certain information, including, among other information, "a detailed description of the work performed broken down by hours or fractions thereof expended on each task" and "a listing of any expenditures for which reimbursement is sought." Local Rule 109.2.b. (D.Md. 2018).

Here, Escobar embeds her request for attorneys' fees in her Motion for Summary Judgment and Reply; they do not provide "a detailed description of the work performed" or a "listing of expenditures" as required under Local Rule 109. Nor do they provide any of the other information required under the Local Rules. To be sure, Escobar attaches to her Motion an itemized list of attorneys' fees, Affidavits from her counsel, an invoice for the deposition of Steele, and a receipt for the filing fee. (Pl.'s Mot. Exs. K–O, ECF Nos. 41-13 through 41-17). But the itemized list of attorneys' fees is for work performed between July 11, 2012 and March 18, 2013—it does not include information on the time period for which Escobar is currently requesting attorneys' fees. (See Pl.'s Mot. Ex. L). Similarly, counsel's Affidavits attesting to their respective levels of experience are dated March 18, 2013. (Millman Aff. at 5, ECF No. 41-13; Luchansky Aff. at 2, ECF No. 41-15). And the current hourly billing rate to which Millman attests in his Affidavit, $225.00, (Millman Aff. ¶ 9), is $100.00 less than the rate he is now requesting, (see Mem. Supp. Pl.'s Mot. at 15). Because Escobar's counsel has not submitted documentation to support the reasonableness of the attorneys' fees requested in compliance with the Local Rules, the Court will deny Escobar's request for supplemental attorneys' fees without prejudice. The

Court will, however, enter judgment against Steele for the amount of the previous award of attorneys' fees, $39,665.55.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant Escobar's Motion for Summary Judgment (ECF No. 41) and deny without prejudice her request for an award of supplemental attorneys' fees. The Court will also deny Steele's Opposition to Plaintiff's Motion for Summary Judgment, or Alternatively, to Postpone Until Completion of Discovery (ECF No. 43). A separate Order follows.

Entered this 24th day of July, 2019.

_____/s/_____

George L. Russell, III
United States District Judge